Filed 3/3/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.L. et al., Persons Coming Under the Juvenile Court Law. | B242179 |
| | (Los Angeles County Super. Ct. No. CK 91269) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
|     Plaintiff and Respondent, | |
|     v. | |
| J.P., | |
|     Defendant; | |
| A.L., | |
|     Appellant; | |
| LOS ANGELES TIMES COMMUNICATIONS LLC, | |
|     Respondent. | |

APPEAL from an order of the Superior Court for the County of Los Angeles. Rudolph Diaz, Judge.  Reversed.

Joseph D. MacKenzie, under appointment by the Court of Appeal, for Appellant.

William Wesley Patton for Whittier Law School Legal Policy Clinic as Amicus Curiae on behalf of Appellant.

Kenneth Krekorian for Los Angeles Dependency Lawyers, Inc., as Amicus Curiae on behalf of Appellant.

No appearance for Plaintiff and Respondent.

Davis Wright Tremaine, Kelli L. Sager, Rochelle L. Wilcox, Jeff Glasser, Dan Laidman; and Karlene W. Goller for Respondent.

Frederick R. Bennett, Court Counsel, Los Angeles Superior Court as Amicus Curiae, upon the request of the Court of Appeal.

Marcy Forgey, MD, MPH, president of California Academy of Child & Adolescent Psychiatry, in pro. per., as Amicus Curiae.

Children's Advocacy Institute, Robert C. Fellmeth, Elisa Weichel, Christina Riehl, and Ed Howard as Amicus Curiae.

_____

**SUMMARY**

The child in this dependency case appeals the juvenile court's order allowing access by the Los Angeles Times to the dependency proceedings. In allowing access, the juvenile court complied with a blanket order from the presiding judge of the juvenile court. The blanket order provides that all members of the press "shall be allowed access" to dependency hearings unless there is a reasonable likelihood that access will be harmful to the child's best interests. The order further provides that no one may be denied access to a courtroom until an objection has been made, and until the objecting party has demonstrated that harm or detriment to the child is reasonably likely to occur as a result of permitting access.

We conclude the blanket order, by declaring the press cannot be excluded until an objection is made and harm to the child is demonstrated, conflicts with Welfare and Institutions Code section 346 (section 346). The blanket order interferes with the discretion section 346 vests in the court to determine, on a case-by-case basis, whether a person may be admitted to the hearing based on a "direct and legitimate interest in the particular case or the work of the court." Accordingly, the blanket order is invalid and the juvenile court's order allowing access to The Times in this case is reversed.

2

## BACKGROUND

Section 346 governs public and media attendance at dependency court hearings. Section 346 states: "Unless requested by a parent or guardian and consented to or requested by the minor concerning whom the petition has been filed, the public shall not be admitted to a juvenile court hearing. The judge or referee may nevertheless admit such persons as he deems to have a direct and legitimate interest in the particular case or the work of the court." This has been the law for several decades.

On January 31, 2012, the presiding judge of the juvenile court, the Honorable Michael Nash, issued a blanket order "to provide guidance to the parties, the press and members of the public as to how the Los Angeles Juvenile Dependency Court will apply" section 346. (Super. Ct. L.A. County, Juvenile Division, Blanket Order (Jan. 31, 2012).) The order was issued after the presiding judge solicited and received written comments on a proposed order and held a public hearing at which all interested parties were invited to speak.

The key provisions of the blanket order are these.

First, members of the press are "deemed to have a legitimate interest in the work of the court," and "shall be allowed access to Juvenile Dependency Court hearings unless there is a reasonable likelihood that such access will be harmful to the child's or children's best interests." (Blanket Order, Nos. 1 & 2.)

Second, any party may object to access by members of the press or the public. The objecting party "must demonstrate that harm or detriment to the minor child is reasonably likely to occur in the case as a result of permitting the public or press access to the proceeding." (Blanket Order, No. 4.) When an objection is made, "the court will consider such factors as the age of each child, the nature of the allegations, the extent of the present or expected publicity and its effect, if any, on the children and on family reunification and permanence, and the safety and well-being of the child, parents and family, consistent with the overriding purpose of the proceeding to protect the child and advance his or her best interests."[1] (Blanket Order, No. 5.)

---

[1]     The presiding judge revised the blanket order on March 5, 2013, taking into consideration federal statutes requiring policies on public access that ensure the safety

3

Third, the court may not deny access to the courtroom to a member of the press or public "until an objection has been made and the court has found, based on the evidence and argument presented, that either the member of the public has no legitimate interest in the case or the work of the court, or if there is a legitimate interest, that, after balancing the considerations [listed above], access must be denied." (Blanket Order, No. 7.)[2]

After the blanket order was issued, representatives of The Times began to attend dependency hearings, and Children's Law Center lawyers and others responded by objecting to the presence of the press. One of these cases was that of A.L., a girl of 15, and her four younger siblings.

The Los Angeles County Department of Children and Family Services had detained the five children after A.L. was assaulted by her stepfather, J.P. The Department's petition alleged J.P. had an unresolved history of alcohol abuse that led to acts of brutal domestic violence on the mother and A.L. The petition alleged mother was aware of and had not protected the children from J.P.'s alcohol abuse.

A pretrial resolution conference was scheduled for February 7, 2012, one week after Judge Nash issued the blanket order. A reporter and an attorney for The Times were present. A.L.'s counsel objected to their presence in the courtroom, and asked to

and well-being of the child, parents and family. We quote in this opinion from the modified order currently in effect.

[2] The blanket order has other provisions not directly at issue here. It provides that members of the public "shall be admitted" to dependency court hearings "at the request of or with the consent of" the child. Where a child does not request or consent to admission, members of the public "may enter the courtroom and be present at a hearing if the court finds that such persons have a direct or legitimate interest in the case or the work of the court." Such persons must identify themselves and the purpose of their presence, on request of the court. (Blanket Order, No. 3.) The court's finding after an objection at one hearing (or portion of a hearing) "shall not prejudice a party or the court from making a similar motion at a subsequent hearing or later in the same hearing." (Blanket Order, No. 6.) No one is permitted to record, videotape or photograph any proceeding "without complying with California Rules of Court, Rule 1.150." (Blanket Order, No. 8.)

4

continue the matter and to brief the issue of confidentiality. Counsel for The Times asserted that counsel for the Children's Law Center was "making blanket objections, which are impermissible under the court's blanket order . . . , and we would request the proceedings proceed." The court set a briefing schedule and an adjudication date of March 13, 2012.

A.L.'s brief in support of her objection to media access asserted that the blanket order was invalid, and press access should be decided on a case-by-case basis. A.L. requested the court to conduct a closed hearing, because "[i]f the press is allowed to be present while children's counsel presents arguments regarding the sensitive nature of the case, then the sensitive information will have already been made public and there would be no point to the hearing." A.L. filed a separate objection, not served on The Times, "set[ting] forth the particular reasons it is not in the best interests of this child to have the press present at her hearing."

A.L.'s separate objection stated these grounds: "The facts underlying this case are particularly brutal, and the oldest child in particular was the victim of a brutal assault by her father. This child is at an age (15) where children are extremely sensitive to the possibility of their private information being disseminated to others. Child will be personally present at the hearing in question, and has a right to personally participate in the hearing, without the threat that intimate details and other confidential information about her personal life may become known to strangers. This child has requested to be able to personally inform the court as to why she does not wish strangers present at her hearing, and she will be available at the adjudication to do tha[t]."

On March 13, 2012, the court stated its tentative ruling to allow the press to be present. A.L.'s counsel asked "that the press be excluded from that preliminary hearing as to the question whether they should be present," because otherwise "[e]verything that we want to keep confidential is public." The Times pointed out that the blanket order provided otherwise, and objected to the filing of the child's separate sealed objection without leave of court. A.L.'s counsel argued that the court's discretion to allow the press to attend should be on a case-by-case basis, "according to the particular facts of our client, which should be kept confidential unless Your Honor believes that they need not

5

[be] kept confidential." The Times pointed out the press was deemed in the blanket order to have a legitimate interest, and "the only consideration for the court is whether they have met their burden as to reasonable likelihood of harm to the child."

The court stated: "My ruling is that I don't think the objector has met the burden to show that allowing the press access would result in the reasonable likelihood that such access would be harmful to the child or the children's best interest in this case."

On April 16, 2012, A.L. filed a writ petition seeking review and a stay of the juvenile court's order, but this court denied the petition on April 19, 2012. (Case no. B240474.)

At a hearing on May 4, 2012 (at which The Times was apparently not present), the court declared the children dependents of the juvenile court and placed them with mother under the Department's supervision, with orders for family reunification services. On June 14, 2012, A.L. filed a notice of appeal challenging the court's March 13, 2012 order that The Times was entitled to be present at her dependency hearings.[3]

After A.L. filed her opening brief, the Whittier Law School Legal Policy Clinic requested amicus curiae status, and we granted its request to file a brief in support of A.L. The Department took no position on the issues A.L. raised, but advised the court that The Times had not been served with A.L.'s opening brief or the amicus brief. This court invited The Times and the Los Angeles Superior Court to file amicus briefs, and both did so. We also permitted the Children's Advocacy Institute, Los Angeles Dependency Lawyers, Inc., and the California Academy of Child & Adolescent Psychiatry to file amicus briefs, and permitted two supplemental amicus briefs from Whittier Law School.

## DISCUSSION

Before we turn to the issue before us, we note two preliminary points raised by the Los Angeles Superior Court and The Times, respectively, after the completion of briefing

---

[3] The dissenting opinion contends the trial court's order is not reviewable on appeal because it is unrelated to the appealable dispositional order (see discussion *post*, at pp. 7-8 & fn. 4), and further observes that a legally sufficient writ petition would have been the proper vehicle for review of the trial court's order. We find the latter assertion to be perplexing, since writ review was sought and denied. Denial of the writ, of course, did not extinguish the right to seek later appellate review.

in this case: whether the juvenile court's order allowing The Times to be present at A.L.'s hearings was an appealable order, and whether The Times should be designated a real party in interest in this case. We invited supplemental letter briefs, and answer both questions affirmatively.

First, the order allowing media access to A.L.'s dependency proceedings is reviewable on appeal, upon entry of the dispositional order, as an intermediate order substantially affecting the rights of a party. "A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment" (Welf. & Inst. Code, § 395, subd. (a)(1)), and in a dependency proceeding "the dispositional order constitutes a judgment." (*In re Megan B.* (1991) 235 Cal.App.3d 942, 950.) Under Code of Civil Procedure section 906, upon an appeal from a judgment, "the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits *or* necessarily affects the judgment or order appealed from *or which substantially affects the rights of a party . . . .*" (Italics added; see also *In re Matthew C.* (1993) 6 Cal.4th 386, 396 [same]; *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1404 [section 906 "applies in dependency cases" and is "part and parcel of the 'one final judgment rule' "].)

The Superior Court asserts the order is not appealable because it does not "substantially affect the rights of the parties with regard to the disposition." But this is a misreading of Code of Civil Procedure section 906, which applies to orders "affect[ing] the judgment" *or* "substantially affect[ing] the rights of a party." The statutory right to confidential dependency hearings (absent consent or an exercise of the court's discretion to admit members of the public) is manifestly a substantive right, and an order allowing press access is therefore reviewable, on appeal from the dispositional order, as an order that substantially affects the rights of a party.[4] (Cf. *San Bernardino County Dept. of*

---

[4] The dissent contends the trial court's order is not reviewable under Code of Civil Procedure section 906, citing authorities saying, for example, that section 906 "does not apply to interim orders that are unrelated to the appealable judgment or order from which an appeal is taken." (*Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1133-1134; see also *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 946-948.) We do not disagree with the reviewability analysis in those cases, but we do disagree with the

*Public Social Services v. Superior Court* (1991) 232 Cal.App.3d 188, 195, 200 (*San Bernardino*) [one of the reasons the Legislature added section 346 was "to ensure . . . that dependency proceedings remained private"; embarrassment and emotional trauma from public proceedings "may well interfere with the rehabilitation and reunification of the family"].)

The Times asserts the appeal must be dismissed as untimely. The Times contends the order permitting media access is a collateral final order – an exception to the "one final judgment" rule – and therefore the appeal had to be filed within 60 days of that order, rather than within 60 days of the later dispositional order. We disagree.

The blanket order itself establishes that the order allowing press access was not final, but rather was subject to future modifying orders. (Blanket Order, No. 6 ["The court's finding at one hearing or one portion of the hearing shall not prejudice a party or the court from making a similar motion at a subsequent hearing or later in the same

---

application of the quoted language to the significantly different posture of this case. Both of the cited cases involved an appeal from an appealable order that was *not* the final judgment (e.g., the order denying class certification in *Lopez*), and an attempt to get the court to review, in connection with that appeal, an earlier interim order that would ordinarily not be reviewable until entry of the final judgment (e.g., an order sustaining demurrers to certain claims in *Lopez*). In those cases, the appellant would be able to obtain review of the interim orders on an appeal from the final judgment. (The dissent states it is "factually incorrect" to say the appeals in *Lopez* and *Cahill* did not involve final judgments. But the *Lopez* appeal was taken under the "death knell" exception to the final judgment rule for class actions; the order denying class certification is treated " 'as in essence a final judgment on [the class] claims,' " though the individual claims survive. (*Lopez*, at pp. 1132-1133.) And *Cahill* was a multiparty case where the defendant, in conjunction with its appeal of an order dismissing its cross-complaint against another party who had settled with plaintiff, also sought review of an order denying its motion for summary judgment against the plaintiff.) (*Cahill,* at pp. 945-946.) In contrast with the cited cases, in this case the appeal is from the disposition – the equivalent of the final judgment in the case. If A.L. cannot obtain review of the order now, on appeal from the final judgment, she can never obtain review of an order that substantially affects her rights. In our view, section 906 on its face clearly provides otherwise.

8

hearing."]; see *Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119 [describing an appealable order in a collateral proceeding as "determin[ing] finally for the purposes of further proceedings in the trial court some distinct issue in the case"].) Apart from this, a majority of courts say that, to be appealable, a collateral final order must also direct the performance of an act, and the order granting media access does not do so. (See *Sjoberg*, at p. 119 ["It is not sufficient that the order determine finally . . . some distinct issue in the case; it must direct the payment of money by appellant or the performance of an act by or against him."]; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group) ¶¶ 2:77 to 2:80, pp. 2-45 to 2-49 (rev. #2, 2012) [discussing majority and minority views and citing cases].) In sum, the access order was not a final determination of a collateral matter, nor was it a final judgment in a special proceeding on a collateral matter. (See, e.g., *In re Keisha T.* (1995) 38 Cal.App.4th 220, 229.)

Second, we agree with The Times that it should be designated a real party in interest in this appeal. A real party in interest is defined as " ' "any person or entity whose interest will be directly affected by the proceeding . . . ." [Citation.]' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1178.) The juvenile court below invited briefing and argument from The Times on the issue of press access to A.L.'s hearings. A.L. did not notify The Times of her appeal of the order allowing access. While A.L. questions whether The Times should be designated a real party in interest, she cites no authority preventing that designation, and neither the Department nor the Los Angeles Superior Court has objected. Because The Times has an interest that will be directly affected by its resolution, we designate The Times a real party in interest in this appeal.

We turn to the merits of the appeal. The validity of Judge Nash's order depends on only one thing: whether or not it conflicts with state statutes or statewide court rules, or is inconsistent with the California Constitution or case law. "[T]he outer limits of [a court's inherent rulemaking] authority are clear. A trial court is without authority to adopt local rules or procedures that conflict with statutes or with rules of court adopted by the Judicial Council, or that are inconsistent with the California Constitution or case law." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351, fn. omitted; see *Alliance for Children's Rights v. Los Angeles County Dept. of Children and Family Services*

9

(2002) 95 Cal.App.4th 1129, 1141 ["Dependency courts are 'afford[ed] . . . the broadest possible scope of discretion in making decisions that promote the best interest of the minor,' " and "[i]n doing so, the court may issue blanket orders, applicable to all such cases, so long as the order is consistent with statutes and court rules."].)

We conclude Judge Nash's blanket order conflicts with section 346 and rule 5.530 of the California Rules of Court,[5] and is therefore invalid.

Section 346 is explicit. It says two things. The first is that the public "shall not be admitted to a juvenile court hearing" unless "requested by a parent or guardian and consented to or requested by" a dependent child. The second provides an exception to the first, and it is equally explicit: "The judge or referee may nevertheless admit such persons as he deems to have a direct and legitimate interest in the particular case or the work of the court."

The blanket order effects a paradigm shift from the plain meaning of section 346. Section 346 says the public "shall not be admitted," with an exception for persons whom the judge or referee deems to have a direct and legitimate interest in the particular dependency case or the work of the court. The blanket order, on the other hand, declares that members of the press "shall be allowed access" unless and until a party objects *and* demonstrates that harm or detriment to the child is reasonably likely to occur as a result of permitting press access. Thus, the blanket order (1) entirely eliminates the statutorily designated role of the "judge or referee" in deciding whether to admit members of the press to the hearing, and (2) places a new burden on the child to monitor entrance to the

---

[5] California Rules of Court, rule 5.530 governs "[p]ersons present" at juvenile court proceedings. As relevant here, the rule lists persons who are "entitled to be present . . . ." (Rule 5.530(b)(1)-(11).) Rule 5.530 also lists "[o]thers who may be admitted" under section 346 and other provisions: "Except as provided below, the public must not be admitted to a juvenile court hearing. The court may admit those whom the court deems to have a direct and legitimate interest in the case or in the work of the court." (Rule 5.530(e).) And, "[i]f requested by a parent or guardian in a hearing under section 300, and consented to or requested by the child, the court may permit others to be present." (Rule 5.530(e)(1).)

10

courtroom, to make objections, and to prove harm is likely – before any member of the press may be excluded from the courtroom.

The blanket order's requirements are not procedures or policies that "apply" or "implement" section 346 and the case law. The blanket order reverses the presumptions in section 346, substituting a presumption of openness for a presumption of closure in the dependency system that has an "utter lack of any history or tradition of openness." (*San Bernardino*, *supra*, 232 Cal.App.3d at p. 198.)

The Superior Court and The Times argue the blanket order is not inconsistent with section 346. They rely on two cases that have considered section 346 or its predecessor. The blanket order itself purports to follow those authorities and their reasoning. We are not persuaded.

*In re Brian W.* (1978) 20 Cal.3d 618 (*Brian W.*) involved a 17-year-old juvenile charged with murder, and a fitness hearing to determine whether he should be tried as an adult. The minor moved for a closed hearing and a "gag" order. The trial court granted the closed hearing request as to the general public, but permitted media representatives to attend on the condition that the identity of the minor and parents not be disclosed. The court denied the gag order, finding the minor had failed to demonstrate a "reasonable likelihood" that he would be unable to obtain a fair trial. (*Id.* at pp. 620-621.) The minor sought a writ of mandate. He argued that under California law juveniles were entitled to closed hearings, and that press attendance was inconsistent with "the confidentiality so assured." (*Id.* at pp. 621-622.) The relevant language of the governing statute, Welfare and Institutions Code section 676, was virtually identical to section 346.[6] (See *Brian W.*, at p. 622.)

The Supreme Court rejected the minor's contention that the Legislature could not have intended to include the press among the class of persons with a " 'direct and legitimate interest in the particular case or the work of the court . . . .' " (*Brian W., supra,*

---

**6** Welfare and Institutions Code section 676 applied to both dependency and delinquency proceedings until dependency proceedings were separated from other juvenile court proceedings in 1976. (*San Bernardino, supra,* 232 Cal.App.3d at pp. 194-195.)

20 Cal.3d at p. 622.) The court reviewed the legislative history, and cited comments of the study commission that proposed the statutory language, urging juvenile courts to actively encourage greater participation by the press. The court concluded that "in vesting the judge with discretion to admit to juvenile court proceedings persons having a 'direct and legitimate interest in the particular case or the work of the court,' it was the purpose of the Legislature to allow press attendance at juvenile hearings." (*Id.* at pp. 622, 623.)

The second pertinent authority is *San Bernardino, supra,* 232 Cal.App.3d 188. In that case, the court held there is no constitutionally protected public right of access to juvenile dependency proceedings, but that "members of the press are persons having a 'direct and legitimate interest in the work of the court' and may be permitted to attend such proceedings in the exercise of the juvenile court's discretion under Welfare and Institutions Code section 346." (*Id.* at p. 192, fn. omitted.)

Following *Brian W.*, the *San Bernardino* court rejected the contention that section 346 does not authorize the juvenile court to admit members of the press to juvenile dependency proceedings. (*San Bernardino, supra,* 232 Cal.App.3d at pp. 193-194.) After reiterating the legislative history described in *Brian W.*, the court concluded: "From this, it is readily apparent that the Legislature added section 346 to ensure not only that dependency proceedings remained private but also that the juvenile court in a dependency proceeding retained the same discretion to admit the press and other persons having a 'direct and legitimate interest' as the court had under section 676. Accordingly the court's determination in *Brian W.* that the juvenile court has discretion under section 676 to admit members of the press applies equally to section 346." (*San Bernardino,* at p. 195.)

In *San Bernardino*, the court made several "observations to assist the court in exercising its discretion . . . . First, and foremost, the court's discretion must be directed at determining what is in the best interests of the minors, for that obviously is its primary concern at all times in the juvenile proceeding. At the same time, the court should give proper consideration to the important social values which are fostered by allowing public or press access to the proceedings." (*San Bernardino, supra,* 232 Cal.App.3d at p. 207.)

12

The court continued: "In attempting to balance these competing interests, the court should attempt to apply these broad principles to the unique facts of this case . . . ." (*San Bernardino, supra,* 232 Cal.App.3d at p. 207.) The court then identified a number of factors the juvenile court should consider, and concluded: "After proper consideration of such factors and circumstances, the court should allow press access unless there is a reasonable likelihood that such access will be harmful to the child's or children's best interest in this case." (*Id.* at p. 208.) The court did not decide "whether the juvenile court is required to make express findings in ruling on whether the press should be admitted or which party should bear the burden of proof on the issue." (*Id.* at p. 208, fn. 11.)

The Times reads these cases to say that the Legislature enacted section 346 "with the intent that members of the press <u>would</u> be deemed to have a legitimate interest in the workings of the court," and that it "cannot seriously be questioned that members of the press fall within the category of individuals who have a legitimate interest in the work of the court." We agree that press attendance at dependency proceedings may be allowed, and that the Legislature intended to encourage it, as *Brian W.* tells us. But both *Brian W.* and *San Bernardino* are also clear that press admittance to dependency hearings involves an exercise of the juvenile court's discretion in the context of the unique facts of each case.

*Brian W.* explicitly premised its conclusion that the Legislature intended to allow press attendance on the fact that section 346 "vest[ed] the judge with discretion to admit" persons with a direct and legitimate interest in the particular case or the work of the court. (*Brian W., supra,* 20 Cal.3d at p. 623.) *San Bernardino* repeatedly refers to the juvenile court's discretion, saying that members of the press have a legitimate interest and "may be permitted to attend such proceedings *in the exercise of the juvenile court's discretion*" under section 346. (*San Bernardino, supra,* 232 Cal.App.3d at p. 192, italics added.) Both cases demonstrate that the broad principles favoring closure and the competing interests in press access must be weighed in the context of the unique facts in each case. Nothing in either case suggests that the Legislature intended that members of the press may be deemed to have access to any and all dependency hearings, without any exercise of the trial court's discretion, unless and until an objection is made and the objecting

13

party has proven harm to the child. The blanket order places a burden on the child that is not contemplated by section 346 or anything in its legislative history.

In short, the statutory rule is that "the public shall not be admitted to a juvenile court hearing," with an exception for the admission of persons with a direct and legitimate interest in the case or the work of the court, at the discretion of the judge or referee. (§ 346.) The blanket order interferes with the statutorily required exercise of discretion by the "judge or referee" in each case (*ibid.*), by declaring the press cannot be excluded without an objection. That departs from the statute and the cases by removing the balancing scales and declaring press access is the new norm in every case unless there is an objection and the objection is sustained.

The blanket order effectively creates a presumption that every dependency proceeding is open to the press until such time as a party objects and proves the hearing should be closed. The statute, however, plainly embodies the contrary presumption, that proceedings are private until such time as the judge or referee exercises its discretion to admit a member of the public. As *San Bernardino* points out, "the history of juvenile courts is one of closed proceedings" (*San Bernardino, supra,* 232 Cal.App.3d at p. 197), and "[f]rom its inception in California, . . . the juvenile court hearing was intended to be informal, nonadversarial and private." (*Id.* at p. 198, fn. 5.) The Times contends there was never "a presumption in favor of closed proceedings," but that is flatly wrong. Indeed, over the years and as recently as 2011, legislation has been introduced, but not passed, to create pilot programs "to test whether California should consider moving from presumptively closed juvenile dependency hearings to presumptively open juvenile dependency hearings." (Assem. Com. on Human Services, Analysis of Assem. Bill No. 73 (2011-2012 Reg. Sess.) as amended Mar. 31, 2011, p. 1.)

Counsel for the Superior Court represented to this court that the dependency courts have not been closed to the public in recent years, instead allowing witnesses, lawyers and parties in cases other than those before the court to be present in the courtroom, unless a party before the court objects. We are keenly aware that the Legislature has reduced funding of the courts for several consecutive years, and we accept as true the Superior Court's representation that one inevitable consequence has been the reduction in

14

courtroom staff, including even those who were necessary to protect the privacy of dependency proceedings in each case. But we are not persuaded that the deplorable consequences of inadequate trial court funding signal a legislative intent that dependency proceedings are presumptively open to the media. Counsel for the Superior Court also argued the dependency court practice in recent years is that a party who does not object to the presence of a member of the public is considered to have impliedly consented to their presence. But nothing in section 346 or rule 5.530 of the California Rules of Court supports a rule of law that a child has the burden to discover the identity of strangers in the courtroom and voice an objection before the media may be excluded.

We express no view whether the blanket order may be salutary; it is not consistent with present law, and therefore not within the scope of the court's authority.

That brings us to the question of the burden of proof. The blanket order requires the party objecting to access to "demonstrate that harm or detriment to the minor child is reasonably likely to occur in the case as a result" of permitting access. But section 346 creates a presumption that dependency proceedings are closed to the press and public. Instead, it is the member of the press or public who must first seek admission to the presumptively private hearing from the judge or referee, who exercises his or her discretion, balancing the competing interests, based on the unique facts of the case.

Section 346 is the product of a long history of presumptively private or closed dependency hearings. This presumption of closure may be rebutted in the exercise of the judge or referee's discretion under the unique circumstances of each case. As is the usual case, the person seeking an action from the court – here, admission to the dependency proceeding – has the burden to show he is entitled to it. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [noting the "general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon"].) Consequently, the press must ultimately persuade the court that the balance of competing interests should be weighed in its favor – that is, there is no reasonable likelihood that access will be harmful to the child's best interests. This does not mean the child or party opposing access has no burden to produce evidence; unless the opposing party produces some evidence of the likelihood of harm, a judge or referee would be free to find, based on information in the

15

record already before him, that the member of the press has a legitimate interest and there is no reasonable likelihood of harm to the child. But the press in the end must persuade the court on this point.

In summary, we recognize that the legislative history suggests that juvenile courts should actively encourage greater participation by the press. (*Brian W., supra,* 20 Cal.3d at p. 622.) But balancing of the competing interests and "proper consideration" of the "unique facts" of each case (*San Bernardino, supra,* 232 Cal.App.3d at pp. 207-208) must come before the press is admitted. Private hearings were mandated by statute for good reasons, described at length in *San Bernardino,* where the court concluded: "there can be little doubt that the embarrassment, emotional trauma and additional stress placed on the minor by public proceedings and the publicity engendered by public proceedings may well interfere with the rehabilitation and reunification of the family." (*San Bernardino,* at p. 200.) The blanket order changes these presumptively private hearings to presumptively public hearings, and then places the burden on the child to object and to prove a likelihood of detriment before he or she may have the private hearing that has always been contemplated in dependency matters. This the court may not do.

There may be merit in effecting the reforms provided in the blanket order, but it is not the role of the judiciary to provide a more open system of dependency adjudications. The Legislature has spoken with section 346, and it is for the Legislature, not the courts, to effect changes to the system it has put in place.

## DISPOSITION

The order entitling the Los Angeles Times to attend A.L.'s dependency hearings pursuant to the blanket order rather than in conformance with section 346 is reversed.

GRIMES, J.

I concur:

FLIER, J.

16

**In re A.L. et al.; DCFS v. J.P. etc.**

**B242179**

**BIGELOW, P. J., Dissenting:**

I respectfully dissent.

I would dismiss A.L.'s appeal for the following reasons. First, I do not believe the dependency court's order overruling A.L.'s objection to the presence of the Los Angeles Times in the courtroom during the dependency proceedings is itself an appealable order. A party's right to appeal is completely a creature of statute. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1152 (*Melinda K.*).) Appeals in dependency proceedings are governed by section 395 of the Welfare and Institutions Code.[1] Under section 395, a judgment in a dependency proceeding may be appealed in "the same manner as a final judgment. . . ." The dispositional order in a dependency proceeding constitutes an appealable judgment in the proceeding. (*Melinda K., supra,* 116 Cal.App.4th at p. 1153.) Thus, the first hearing from which an appeal can be taken in a dependency proceeding under section 395 is the dispositional hearing. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150.) Orders rendered prior to the dispositional order which are not appealable orders include jurisdictional orders (see, e.g. *In re Candida S.* (1992) 7 Cal.App.4th 1240, 1249) and predisposition orders that reasonable services had been provided. (*See, e.g. Melinda K., supra,* 116 Cal.App.4th at pp. 1152-1156.) The order at issue in A.L.'s current case is a predispostional order of this same nature and is not appealable under section 395.

Further, the order may not be viewed as a final order on a collateral matter as the Los Angeles Times has argued in its submissions to our court. In *Sjoberg v. Hastorf* (1948) 33 Cal.2d 116 (*Sjoberg*), the Supreme Court explained the circumstances in which an order may be considered an order on a collateral matter for purposes of appealability:

---

[1]   All further section references are to the Welfare and Institutions Code unless otherwise specified.

1

"It is not sufficient that the order determine finally for the purposes of further proceedings in the trial court some distinct issue in the case; *it must direct the payment of money by appellant or the performance of an act by or against [appellant]*." (*Id.* at p. 119, italics added.)[2] The dependency court issued no such order here. Instead, a party to the proceeding, A.L., raised an objection to one aspect of how the proceedings were being conducted, namely, the presence of the press in the courtroom, which the court overruled. It was not an order requiring A.L. to pay money or act or refrain from acting in any way. (See *Ponce-Bran v. Trustees of Cal. State University* (1996) 48 Cal.App.4th 1656, 1662.) As a result, the dependency court's order overruling A.L.'s objection constituted an interim, nonappealable order by a party.[3]

I disagree with The Times' argument, based on cases such as *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410-1411 (*Lechowick*), and *In re Keisha T.* (1995) 38 Cal.App.4th 220, 229 (*Keisha T.*), that the dependency court's March 2012 order is a final order on a collateral matter. In *Lechowick* and *Keisha T.*, non-party

---

[2]    In *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561-562 (*Lester*), the appellate court concluded that some cases have incorrectly interpreted a subsequent California Supreme Court case, *Meehan v. Hopps* (1955) 45 Cal.2d 213 (*Meehan*), as changing the *Sjoberg* rule to allow interlocutory orders to be appealed despite the failure to direct the payment of money or the performance of an act. We agree with *Lester* that the "*Sjoberg* rule remains the law of California, notwithstanding *Meehan*. (*Conservatorship of Rich* [(1996) 46 Cal.App.4th 1223,] 1236-1237; *Efron v. Kalmanovitz* [(1960) 185 Cal.App.2d 149,] 155 [explaining that order in *Meehan* was appealable by statute because it denied injunctive relief (Code Civ. Proc., § 904.1, subd. (a)(6)) and pointing out that the *Meehan* court showed no intent to overrule *Sjoberg*].)" (*Lester, supra*, at p. 562, fn. omitted; see also, Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶¶ 2:78 to 2:79, pp. 2-46 to 2-48 [indicating the contrary view is the minority view and that many of the cases that follow the contrary rule cite to "mixed messages from the California Supreme Court" on the issue].)

[3]    This appeal does not arise from an action commenced to challenge the propriety of the blanket order concerning the press issued by the dependency court's presiding judge. (Maj. Opn. p. 9.) A.L.'s appeal concerns a decision by one dependency court judge to allow the press to be present in the courtroom during the dependency proceedings.

2

journalists initiated "special proceedings" within the framework of pending court proceedings, by submitting written applications to gain access to the court files in those pending proceedings. The appellants in *Lechowick* and *Keisha T.* were the journalists whose special proceeding applications were denied. In that context, the Court of Appeal ruled that the final orders on the journalists' special proceeding applications were final orders on collateral matters. Here, The Times did not initiate a special proceeding on a collateral matter within the framework of a pending proceeding, nor is The Times appealing an order on such a special proceeding. As explained above, here we have a dependency court's order overruling a party's objection to the conduct of a proceeding. I would not find this to be a final order on a collateral matter.

But even assuming the dependency court's March 2012 order was an appealable order, our court would not have jurisdiction to entertain A.L.'s appeal because he filed his notice of appeal too late. Under California Rules of Court, rule 8.406(a)(1), a notice of appeal in a dependency proceeding must be filed within 60 days after "the making of the order being appealed." In other words, upon the making of an appealable order or judgment in a dependency proceeding, a 60-day deadline to appeal begins to run. Further, if a party fails to appeal an appealable order or judgment within the prescribed time, a reviewing court does not have jurisdiction to review the order or judgment, and the time to appeal is not restarted or extended by a subsequent appealable order or judgment. (*See Melinda K.*, *supra*, 116 Cal.App.4th at p. 1156.) Here, the dependency court overruled A.L.'s objection in March 2012, and A.L. did not file her notice of appeal until June 2012, after the 60-day period for filing an appeal had expired.

Finally, I would find the dependency court's nonappealable March 2012 order is not *reviewable* in the context of A.L.'s current appeal. A.L. filed a timely notice of appeal in June 2012, following entry of an appealable judgment, namely, the dependency court's May 2012 dispositional orders. (§ 395; *Melinda K., sup*ra, 116 Cal.App.4th at p. 1153.) A.L.'s notice of appeal filed in June 2012 cites the dependency court's order issued in March 2012, but also included language referencing the dispositional orders issued in May 2012. Under the rule requiring liberal construction of a notice of appeal

3

(see Cal. Rules of Court, rule 8.100(a)(2)), I would find A.L. perfected an appeal from an appealable judgment. However, the question remains whether we may on appeal *review* the dependency court's interim, predispositional, nonappealable order overruling A.L.'s objection to the presence of the Los Angeles Times in the courtroom during the dependency court proceeding.

Section 395 reads: "A judgment in a proceeding under section 300 may be appealed in the same manner as any final judgment. . . ." As noted above, the order entered at a dispositional hearing is considered a final judgment. (*In re Daniel K*. (1998) 61 Cal.App.4th 661, 667.) Code of Civil Procedure section 906 generally provides what may be reviewed in an appeal from a final judgment. It provides that a reviewing court "may review the verdict or decision *and any intermediate ruling, proceeding, order or decision which [1] involves the merits or [2] necessarily affects the judgment or order appealed from or [3] which substantially affects the rights of a party . . . .*" (Italics added.) This standard applies in dependency cases. (*In re Brittany S*. (1993) 17 Cal.App.4th 1399, 1404.)

I would not address the dependency court's order overruling A.L.'s objection to the presence of the press in the context of A.L.'s current appeal because the order does not substantially affect A.L.'s rights vis-à-vis the dependency court's judgment. A judgment in a disposition hearing determines whether the child should be declared a dependent child. (*In re Heather B*. (1992) 9 Cal.App.4th 535, 543-544.) Nothing in the record on appeal supports a conclusion that the dependency court's order overruling A.L.'s objection to the presence of the press had any effect on the disposition. A.L. does not ask that the court's dispositional orders be reversed or modified in any manner. A trial court's decision to overrule an objection is simply not reviewable on appeal when the ultimate judgment is not contested by any party.

*In re Castro* (1966) 243 Cal.App.2d 402, is instructive. There, a juvenile was declared a ward of the court on the basis of two counts of arson. (*Id.* at p. 404.) He appealed, raising issues regarding the admissibility of his confession. As to his contention that he should have been granted bail pending the delinquency hearing, the

4

court stated, "it is to be noted that the suggestion of the appellant that this . . . should be considered on this appeal is not well taken; for, if at this stage, we should conclude . . . that the court should have released custody of the minor to his parents during the pendency of the action, such a finding would not properly be a ground for reversing the judgment. A question of this kind should be raised, if at all, by a writ of habeas corpus or other appropriate writ before judgment at the time of the court's refusal to release the minor." (*Id.* at p. 412.)

To find the issue raised by A.L. reviewable on appeal, the majority broadly construes the language in section 906 "which substantially affects the rights of a party," reasoning that A.L. had a "substantive right" to closed hearings in the dependency court. I would not read the phrase "which substantially affects the rights of a party" as broadly as the majority.

As explained in *Lopez v. Brown* (2013) 217 Cal.App.4th 1114 (*Lopez*), section 906 allows for review of an interim, nonappealable order that "substantially affects the rights of a party," on appeal from a final judgment or appealable order. (*Lopez, supra,* at pp. 1132-1134, italics omitted.) But section 906 "does not apply to interim orders that are unrelated to the appealable judgment or order from which an appeal is taken." (*Lopez,* at pp. 1133-1134.) " 'The clear import of [section 906] is to allow an appellate court to review rulings, orders, or other decisions that led up to, or directly related to, the judgment or order being appealed to the extent they substantially affected the rights of one of the parties to the appeal.' " (*Id.* at p. 1135, quoting from *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 946-948 (*Cahill*).) " 'Therefore, nonappealable orders or other decisions substantively and/or procedurally collateral to, and not directly related to, the judgment or order being appealed are not reviewable pursuant to section 906 even though they literally may "substantially affect[]" one of the parties to the appeal.' " (*Lopez,* at p. 1135.) I agree with the *Lopez* and *Cahill* courts that a contrary interpretation " 'could allow one party to the direct appeal to, in colloquial terms, "open the floodgates" and bring into the appeal all sorts of collateral or other unrelated intermediate decisions that do not affect the other party to the appeal or the

appealed decision, thereby potentially increasing exponentially the issues to be addressed on appeal and the use of limited judicial resources to decide those issues.' " (*Lopez, supra*, 217 Cal.App.4th at p. 1135, quoting *Cahill, supra*, 194 Cal.App.4th at p. 948.)

Insofar as the majority contends the latter two cases are distinguishable because they did not involve final judgments, this is both factually incorrect and also inconsequential. It is the *principle* that appellate review is not available unless the order substantially affects the rights of the parties as it relates to the judgment being appealed, *not the procedural posture* of the case, which is significant. The majority's construction of what is reviewable on appeal has the potential for mischief in that it opens a door for our state's appellate courts to review interim orders unrelated to judgments. This is not the role of an appellate court; appellate courts review the correctness of judgments.[4]

This does not, as the majority asserts, leave a party without means of challenging an order overruling an objection to the manner in which a dependency court proceeding is being conducted. (Maj. Opn., pp. 7-8, fn. 4.) Such an order may be challenged by a petition for writ of mandate. The majority finds it "perplexing" that I assert the trial court's order may be challenged by writ since "writ review was sought and denied" in this case. (Maj. Opn., p. 6, fn. 3.) It is true that our court summarily denied a writ of mandate filed by A.L. on this subject. But a summary denial does not mean we denied review because we found A.L. had an adequate remedy by means of appeal. Our order did not cite a case indicating we were denying the writ on that basis. (*See, e.g.*, *Sutco Construction Co. v. Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1226.) A summary denial may issue for many reasons. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 899.) It does not necessarily mean the merits of the petition were not considered; it merely relieves the court of the requirement of issuing a written opinion. (See, e.g., *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1018, fn. 3 ["We hasten to

---

**4** I would also note that *Lopez* involved the equivalent of a final judgment under the so-called " 'death knell' " exception, applicable upon the denial of class certification. (*Lopez, supra,* 217 Cal.App.4th at p. 1131.)

6

dispel the bar's common misconception that a summary denial of a writ petition suggests summary consideration.  The Courts of Appeal review and evaluate the hundreds of petitions filed each year in each appellate district.  The merits of these petitions are fully examined.  Sheer volume prohibits a written decision in every case, and one is not required."].)  Further, a ruling on an objection to the conduct of a dependency proceeding may also be challenged on appeal, provided it is claimed that the ruling affected the judgment.

For the reasons discussed above, I would find A.L.'s challenge here is not reviewable on appeal because it does not substantially affect her rights related to the judgment.

I would dismiss the appeal.[5]

BIGELOW, P.J.

---

[5]     I would also take judicial notice of the fact that jurisdiction was terminated on May 30, 2013, and find the case moot.  " 'A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief.  [Citation.]' " (*Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 364.)  The Majority's disposition of this case – preventing the press from attending subsequent dependency hearings in A.L.'s case – is of no assistance to A.L. at this point.

7