Filed 7/15/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re HARLEY C., et al., Persons Coming Under the Juvenile Court Law. | B293323 (Los Angeles County Super. Ct. No. 17LJJP00093B-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MARIA O., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nancy Ramirez, Judge. Reversed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Stephen P. Watson, Deputy County Counsel for Plaintiff and Respondent.

_____

In a juvenile dependency matter set for a contested dispositional hearing, the juvenile court refused to permit mother Maria O. to testify or to call witnesses because her counsel had not filed a joint trial statement as required by a local rule. We conclude that the local rule is invalid and reverse the dispositional orders.

### FACTUAL AND PROCEDURAL BACKGROUND

At the July 19, 2018, jurisdictional hearing on a juvenile dependency petition with respect to Mother's children, Harley C., and S.C., Mother waived her right to a trial and submitted on the reports. The juvenile court found that the children came within the court's jurisdiction pursuant to Welfare and Institutions Code section 300, subdivisions (b) [failure to protect] and (j) [abuse of sibling].

Mother requested a contested dispositional hearing. Mother sought placement of the children with her,[1] while the Department of Children and Family Services recommended that jurisdiction be terminated with a family law order granting the children's father sole physical custody and joint legal custody, with monitored visitation for Mother. Minors' counsel recommended that the case remain open and that Mother be offered reunification services.

The juvenile court released the children to their father pending the dispositional hearing. The court set a date for the

_____

[1] Although Mother wanted both children placed with her, she was willing to accede to one of the children's wish not to live with her. Her counsel explained, "My client is requesting home of parents. She is primarily asking for [S.C] to be in her home. My understanding is that Harley does not wish to reside with Mother at this time."

2

contested hearing, and, at Mother's request, ordered that DCFS provide a supplemental report concerning Mother's visitation and progress in her case plan.  The court waived the minors' presence at the dispositional hearing because Mother did not anticipate calling them to testify.

When the contested dispositional hearing took place on September 26, 2018, DCFS continued to recommend termination of jurisdiction.  The minors' position had changed, however:  they now requested termination of jurisdiction with legal and physical custody of the children to their father and unmonitored visits in a public setting for Mother.

After admitting DCFS's exhibits into evidence without objection, the juvenile court asked, "Are any witnesses to be called?"

Mother's counsel said, "Your Honor, I actually would like S[.C.] to testify briefly as to a report that we have received."  S.C. was present in court that day.

Minors' counsel objected on the ground that Mother had not filed any document with the court "so that we would be . . . able to inform my client that this was going to occur.  It is inappropriate for this to be asked for on the morning of the trial." Minors' counsel acknowledged that Mother was likely making this request because Minors' counsel had changed position on the requested disposition, but she objected nonetheless, stating, "This information is in the report.  I believe it's [Evidence Code section] 352."

The court ruled, "Court notes that the adjudication was set on July 19th.  Court has procedures in place when contests are set and that's for a joint trial exhibit to be provided indicating what witnesses are to be called.  Court has not received a trial

3

statement, and the court is denying the request—the last-minute request for S[.C.] to testify today."

Mother's counsel responded, "Your Honor, that would be over Mother's objection. I would note that Minors were in—were in agreement with Mother's position to at least keep the case open. [¶] As we walked in the door, [Minors' counsel] told me that she is no longer in that position. The joint trial statement policies were not instituted until mid-August. This case was set before that. [¶] There was also no date set for joint trial statements when this matter was set for contest."

"That is not the court's responsibility," said the juvenile court. "Counsel knows what the procedures are and they are to follow the court's procedures."

Mother's counsel explained that the reason for her last-minute request that S.C. testify was Minor's counsel's last minute change in her recommended disposition. Mother's counsel asked for a continuance if the court would not permit S.C. to testify that day because no statement had been filed, "so I can prepare a joint trial statement and then all parties will be noticed that I would be asking for S[.C.] to testify. [¶] I think my client is put at a disadvantage for this last-minute information and change in position. I'm ready to proceed and Minor is here."

"Court is denying the request," the court answered. "We will proceed to argument if no witnesses are going to be called."

After consulting with Mother, Mother's counsel said, "My client would like to testify."

The court refused. "As the court stated earlier, unless the court and counsel were given prior notice through the statement of what witnesses will be called and what they will be called to

testify to. That was not done so court's not going to allow any witnesses to be called at disposition."

"Well, the court just requested any witnesses to be called," Mother's counsel replied. "My client would like to testify in this matter. I believe she has a right to testify. [¶] If the court is denying her right to testify in her own defense for the disposition, then that would be over her objection."

"So noted," the court said, and proceeded to hear argument.

Mother's counsel asked for both children to be returned to her, but indicated that Mother was particularly seeking placement of S[.C.] in her care. She argued that Mother was more able to meet S.C.'s medical needs than S.C.'s father was, citing several medical issues that had arisen while S.C. was in her father's custody. Mother's counsel cited Mother's compliance with the case plan: She previously had documented her completion of 19 of 21 domestic violence group sessions, and had since completed the rest; she was attending individual counseling; and she had completed a parenting class. Mother had also taken an anger management class although she had not been ordered to do so.

"[A]lthough my client was not allowed by the court to testify," Mother's counsel argued, "she would absolutely deny any allegations that she remains in a relationship with [her male companion with whom domestic violence had occurred]. She is no longer in a relationship with him." Mother's counsel said that had the court permitted her to examine S.C., "we would be cross-examining her on her statements" in a report from the previous month.

"Based on my client's active participation in her case plan and the—she does have her proof of completion certificate with

5

her, I would ask that the court allow S[.C.], at the very least, to return home of parent Mother and/or order for home of parents for both children, and the court could perhaps have a primary residence of Harley with the father and S.[C.] with the Mother." If the court was inclined to terminate jurisdiction, she requested either a contested hearing on the terms of the family law order or shared legal and physical custody of the children, with primary custody of S.C. and Harley with Mother unless Harley preferred to reside primarily with his father.

The juvenile court terminated jurisdiction and awarded sole physical and joint legal custody to the children's father. As Minors' counsel had recommended, the court ordered visitation for Mother with the children, with visits to be monitored if the visit took place in a private setting and unmonitored if it occurred in public. Mother appeals.

## DISCUSSION

### I. Authority and Procedures for Adopting Local Rules

#### A. Scope of Power to Establish Local Rules

The authority of California courts to promulgate local rules is beyond dispute. "[T]rial courts possess inherent rulemaking authority as well as rulemaking authority granted by statute. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967, 67 Cal.Rptr.2d 16, 941 P.2d 1203 (*Rutherford*); Code Civ. Proc., §§ 128, 177, 575.1; Gov. Code, § 68070.) 'It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. [Citation.] . . . " . . . That inherent power entitles trial courts to exercise reasonable control over all

6

proceedings connected with pending litigation . . . in order to insure the orderly administration of justice.  [Citation.]'" [Citation.]"  (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351-1352 (*Elkins*).)

The Legislature has constrained this authority by enacting Government Code section 68070, which provides that courts may institute only those local rules that are "not inconsistent with law or with the rules adopted and prescribed by the Judicial Council." (Gov. Code, § 68070, subd. (a).)  As a result, "[a] trial court is without authority to adopt local rules or procedures that conflict with statutes or with rules of court adopted by the Judicial Council, or that are inconsistent with the Constitution or case law."  (*Elkins*, *supra*, 41 Cal.4th at p. 1351.)  This limitation applies whether the court's directive is characterized as a local rule or as a court policy.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 612 (*Jameson*) ["[T]o be valid a local court policy, like a local court rule, must be consistent with the federal and state Constitutions, statutes, rules of court, and applicable case law"].)

California courts routinely strike down local rules and practices that conflict with state law.  For instance, in *Elkins*, the California Supreme Court invalidated a local court rule requiring parties to present their cases in marriage dissolution trials through written declarations and to establish the admissibility of trial exhibits in pretrial declarations because the rule conflicted with California evidence law.  (*Elkins*, *supra*, 41 Cal.4th at pp. 1344-1345, 1356-1357.)  The Supreme Court has also ruled invalid a local court policy discontinuing court reporters, at least as applied to fee waiver recipients, because the failure to ensure that indigent litigants had access to a verbatim record of court proceedings conflicted with the principles underlying California's

7

in forma pauperis doctrine and embodied in legislative policy. (*Jameson*, *supra*, 5 Cal.5th at p. 623.)

In *In re A.L.* (2014) 224 Cal.App.4th 354, the Court of Appeal struck down a blanket order applicable to the Los Angeles dependency courts concerning the admission of the public to juvenile court hearings because the order conflicted with the Welfare and Institutions Code and the California Rules of Court. (*Id.* at pp. 363-368.)  Similarly, the Court of Appeal ruled that a local rule cannot override state law setting the date on which the time period for filing a peremptory challenge to a judge commences.  (*Ghaffarpour v. Superior Court* (2012) 202 Cal.App.4th 1463, 1469-1471.)  The Courts of Appeal have invalidated local rules that:  established an expedited procedure for summary judgment that shortened the statutorily prescribed minimum notice period and altered the standards for production of evidence for summary judgment motions (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 652-655); required a joint statement of disputed and undisputed facts in conjunction with summary judgment motions that conflicted with the statutory requirement of separate statements (*Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1158 (*Kalivas*)); dispensed with the Code of Civil Procedure's requirement that the moving party meet its initial burden of proof when moving for summary judgment and permitted trial courts to grant summary judgment based solely on the absence of opposition (*Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1084-1087); imposed requirements on a marital settlement agreement beyond those required by the Evidence Code and the Code of Civil Procedure (*In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881, 894-900); and required a party to file a particular form to support a request

8

for attorney fees and costs that conflicted with the California Rules of Court (*In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 167). Local rules that conflict with state law are unenforceable: for instance, trial courts may not refuse to file complaints that comply with state requirements because they fail to comply with a local rule (*Carlson v. State of California Department of Fish & Game* (1998) 68 Cal.App.4th 1268, 1279-1282), nor may they delay filing arbitration awards on the basis of a local court practice when that practice conflicts with state law requiring documents to be filed on the date they are received by the court clerk (*Mentzer v. Hardoin* (1994) 28 Cal.App.4th 1365, 1367-1372).

As the Court of Appeal explained in *Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, "the courts' power[] to fashion new procedures is not boundless [citation]. Rather, 'inherent power may only be exercised to the extent not inconsistent with the federal or state Constitutions, or California statutory law.' [Citations.] Thus, '[a]lthough broad in scope, this inherent power to fashion novel procedures is not unlimited. A court cannot adopt an innovative rule or procedure without carefully weighing its impact on the constitutional rights of the litigants.' (*In re Amber S.* (1993) 15 Cal.App.4th 1260, 1264-1265, 19 Cal.Rptr.2d 404.)" (*Id.* at pp. 172-173.)

B. Procedures for Adopting Local Rules

California has established detailed procedures by which courts may adopt local rules. These procedures, contained in the Code of Civil Procedure and the corresponding California Rules of Court, evince the Legislature's desire to preserve the latitude of judges, districts, and superior courts to develop policies to control the litigation before them while protecting litigants' rights by

9

ensuring that all those who appear in the courts have access to the local rules and notice of what the rules are.

Accordingly, Code of Civil Procedure[2] section 575.1 mandates that, when a superior court wishes to adopt local rules, the proposed rules must be published and submitted to the local bar and other stakeholders for consideration and recommendations; and, once adopted, they must be filed with the Judicial Council in a specified format, made available for public examination, published for general distribution, and made available for inspection and copying in every location of the court that generally accepts documents for filing. (§ 575.1, subds. (a) & (b).) If a judge of a court adopts a rule that applies solely to that judge's courtroom, or a particular branch or district of a court adopts a rule applicable to that branch or district, the court must "publish these rules as part of the general publication of rules required by the California Rules of Court. The court shall organize the rules so that rules on a common subject, whether individual, branch, district, or courtwide appear sequentially. Individual judges' rules and branch and district rules are local rules of court for purposes of this section and for purposes of the adoption, publication, comment, and filing requirements set forth in the Judicial Council rules applicable to local court rules." (§ 575.1, subd. (c).)

Additionally, California Rules of Court, rule 10.613 applies to "every rule, regulation, order, policy, form, or standard of general application adopted by a court to govern practice or procedure in that court or by a judge of the court to govern practice or procedure in that judge's courtroom." (Cal. Rules of

---

[2]     Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

10

Court, rule 10.613(a)(2).)  This Rule of Court requires most[3] local rules to be distributed for comment to various stakeholders prior to their adoption; published in a specified format and manner; submitted to the Judicial Council in advance of their effective date; and made available to the public at all locations where papers may be filed.  (Cal. Rules of Court, rule 10.613(a)-(h).)

Finally, Government Code section 60871 requires advance submission of local rules to the Judicial Council, standardized effective dates, and availability of the rules for public review in advance of their effective date.  The statute provides, "No rule adopted by a superior court shall take effect until January 1 or July 1, whichever comes first, following the 45th day after it has been filed with the Judicial Council and the clerk of the court, and made immediately available for public examination.  The Judicial Council may establish, by rule, a procedure for exceptions to these effective dates."  The Judicial Council established a procedure for alternate effective dates in the California Rules of Court, rule 10.613(i):  A court may adopt a rule to take effect on a date other than as provided in Government Code section 68071 only if the presiding judge submits to the Judicial Council the proposed rule and a statement of reasons constituting good cause for the alternate effective date; the Chair of the Judicial Council authorizes the rule to take effect on the date proposed; and, on or before the effective date, the rule is made available to the public for

---

[3]     Local rules that "relate only to the internal management of the court" are exempt from some of the requirements of California Rules of Court, Rule 10.613.  (Cal. Rules of Court, rule 10.613(j).)

11

inspection and copying in every location of the court that generally accepts filing of papers.

## II. Local Rule Seven of the McCourtney Courthouse Policies, Effective August 13, 2018, Is Invalid

### A. The Local Rule

Because the rule on which the juvenile court relied to preclude Mother from testifying or presenting witnesses was not included in the record on appeal, we requested that the parties submit the operative rule to this court. County Counsel provided this court with a document with the heading, "McCourtney Courthouse Policies—These policies will take effect on August 13, 2018." This document contains nine policies; the seventh policy states in full, "Joint Trial Statements are required for all scheduled contests."[4] The document is silent with respect to the possible consequences for violating this or any of the other courthouse policies.

Although we requested that the parties inform us of the date the local rule was adopted, no party provided any information concerning the date of adoption or the procedure employed for adopting the McCourtney Courthouse Policies to this court. County Counsel did, however, inform this court that the local rules "were not published as part of the general publication rules."

---

[4] County Counsel also provided a form in Exhibit B, which makes no reference to the rule, although counsel represents it is related. Although that form would provide further guidance to counsel if it were identified in the rule, and made a part of it, the record does not reflect how, if at all, counsel could access the form.

12

B. The Rule Was Adopted in Violation of State Law

We requested that the parties provide supplemental briefing on the questions of whether section 575.1, subdivision (c) and/or California Rules of Court, rule 10.613 apply to the local rule relied upon by the court here to bar Mother from presenting any live witness testimony. Mother argues that both provisions were applicable to the local rule here. County Counsel argues that neither section 575.1 nor California Rules of Court, rule 10.613 applies here because the local rules were adopted in the exercise of the court's inherent rulemaking authority and not pursuant to section 575.1.

Section 575.1, subdivision (c) and California Rules of Court, rule 10.613 do apply to this local rule. "[S]ection 575.1 prescribes the procedures for enacting and adopting valid local court rules" (*Hall v. Superior Court* (2005) 133 Cal.App.4th 908, 915), and local rules adopted in contravention of "the procedures mandated by Code of Civil Procedure section 575.1 or Government Code sections 68070 and 68071" are invalid. (*Id*. at p. 916; see also *Kalivas*, *supra*, 49 Cal.App.4th at pp. 1158-1160 [local rules must comply with promulgation requirements in the Code of Civil Procedure and the Government Code]; *In re Gray* (2009) 179 Cal.App.4th 1189, 1200-1201 [trial court may not enforce local rule court adopted without following the practices set forth in section 575.1].) Moreover, by its own terms, California Rules of Court, rule 10.613 applies to every local rule adopted by trial courts, making no distinction based on the source of authority for the rule. (Cal. Rules of Court, rule 10.613(a)(2).)

Because the McCourtney Courthouse Policies were not published as part of the general publication of rules required by the California Rules of Court and organized so that rules on a

13

common subject, whether individual, branch, district, or courtwide appear sequentially, the local rule violates section 575.1, subdivision (c). On its face the rule also violates several provisions of the California Rules of Court, rule 10.613: the rules are not formatted as required by California Rules of Court, rule 10.613(f); the effective date of each rule is not stated in parentheses following the text of the rule (Cal. Rules of Court, rule 10.613(f)(2)); and the rules lack a table of contents (Cal. Rules of Court, rule 10.613(f)(4)). Moreover, the rule's effective date of August 13, 2018, is inconsistent with Government Code section 60871's requirement that local rules take effect on January 1 or July 1, and the record is devoid of any indication that the presiding judge provided the Judicial Council with the proposed rule and a statement of reasons constituting good cause for the alternate effective date; the Chair of the Judicial Council authorized the rule to take effect on the date proposed; and, on or before the effective date, the rule was made available to the public for inspection and copying—all of which would have been required for the rule to take effect on a date other than January 1 or July 1. (Gov. Code, § 68071; Cal. Rules of Court, rule 10.613(i).)

While it is unclear when and how the local rule was adopted, there is no indication in the record before us that the court filed the local rule with the Judicial Council at all, much less 45 days before its effective date (Cal. Rules of Court, rule 10.613(d)); or that it complied with the requirements regarding publication by an official publisher set forth in California Rules of Court, rule 10.613(c) with respect to this rule. There is also no evidence that the court distributed the rule for comment, at least 45 days before it was adopted, to the county bar associations,

14

nearest offices of the Attorney General, and county counsel in each county within a 100-mile radius of the county seat of the County of Los Angeles as required by California Rules of Court, rule 10.613(g). Finally, the record lacks evidence that the rule was made available for inspection and copying in every location of the court that generally accepts filing of papers, or that the rule was accompanied by a notice indicating where a full set of the rules could be obtained. (Cal. Rules of Court, rule 10.613(b).)

Accordingly, we conclude that the local rule requiring a joint trial statement is invalid because it was adopted in violation of state law and the California Rules of Court. The rule was not properly enforced in this case, and may not be enforced.[5]

C. The Local Rule Conflicts with California Law

Neither the court's statutory authority nor its inherent authority empowers it to make local rules that conflict with California law or the Rules of Court. (Gov. Code, § 68070, subd. (a); *Elkins*, *supra*, 41 Cal.4th at p. 1351-1354; *Rutherford*, *supra*, 16 Cal.4th at p. 967 ["regardless of their source of authority," trial judges lack authority to issue local rules that conflict with statutes or are inconsistent with law].) Any local rule that "conflicts with any statewide statute, rule of law, or Judicial Council rule . . . is an inappropriate exercise of that court's powers" and not "a valid exercise of the court's inherent judicial powers to adopt procedures . . . ." (*Rutherford*, *supra*, 16 Cal.4th at pp. 967-968.)

---

[5] We address only the local rule requiring joint trial statements. The remaining portions of the McCourtney Courthouse Policies are not at issue in this case, and we do not address which of them, if any, conflict with statute, rule of law, or Judicial Council rule.

As applied here, the local rule conflicts with the Welfare and Institutions Code. "After finding that a child is a person described in [Welfare and Institutions Code s]ection 300, the court shall hear evidence on the question of the proper disposition to be made of the child." (Welf. & Inst. Code, § 358, subd. (a).) "Before determining the appropriate disposition, the court shall receive in evidence the social study of the child made by the social worker, any study or evaluation made by a child advocate appointed by the court, and other relevant and material evidence as may be offered . . . ." (Welf. & Inst. Code, § 358, subd. (b)(1).) Although the rule itself is silent as to sanctions for violation of the courthouse rules, the court applied the rule to prevent Mother from presenting relevant evidence, thereby rejecting evidence it was statutorily obligated to receive and consider at disposition.

> D. The Goal of Expediting Proceedings Cannot Justify Denying Mother the Opportunity to Present Relevant Evidence

County Counsel defends the local rule as "part of a larger set of policies designed to manage and expedite dependency cases" that "enables the juvenile courts of McCourtney Courthouse to exercise reasonable control over proceedings . . . ." Efficiency was the primary justification for the local rule in *Elkins*, *supra*, 41 Cal.4th 1337, that required parties in marital dissolution actions to present their cases in written declarations and to establish the admissibility of all their trial exhibits in pretrial declarations. (*Id.* at p. 1365 ["Respondent claims '[f]irst and foremost' that efficiency and the 'expeditious resolution of family law cases' support its rule and order"].) The *Elkins* court rejected this justification. Elkins, who had failed in his pretrial declaration to establish the evidentiary foundation for nearly all

16

of his exhibits, was unable to present evidence or lay a foundation for his exhibits through oral testimony—in essence, the local rules precluded him from presenting his case. (*Id.* at pp. 1344-1345, 1363.) "'While the speedy disposition of cases is desirable, speed is not always compatible with justice. . . . ' [Citation.]." (*Id.* at p. 1366.) A court may not "advance[] the goals of efficiency and conservation of judicial resources by adopting procedures that deviate[] from those established by statute, thereby impairing the countervailing interests of litigants as well as the interest of the public in being afforded access to justice, resolution of a controversy on the merits, and a fair proceeding." (*Id.* at p. 1353.)

Guided by the Supreme Court in *Elkins*, we reject "procedures that exalt efficiency over fairness." (*Elkins*, *supra*, 41 Cal.4th at p. 1368.) "[E]fficiency is not an end in itself. Delay reduction and calendar management are required for a purpose: to promote the just resolution of cases on their merits." (*Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242, 1246.) Trial courts must balance the "opposing responsibilities" of "actively assum[ing] and maintain[ing] control over the pace of litigation" and "abid[ing] by the guiding principle of deciding cases on their merits rather than on procedural deficiencies." (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398 [discussing continuances for the hearing of summary judgment motions].) Decisions implicating both responsibilities "must be made in an atmosphere of substantial justice. When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency." (*Id.* at pp. 398-399.)

17

As applied here, the local rule promoted judicial efficiency over the policy favoring disposition of cases on their merits. The juvenile court mechanically applied the local rule not to promote the just resolution of the case on its merits but to (1) preclude Mother from presenting relevant evidence on the question of the proper disposition of the children; and (2) to turn away evidence the court was required by Welfare and Institutions Code section 358 to receive and consider. As the Supreme Court observed in *Elkins*, *supra*, 41 Cal.4th at page 1366, "That a procedure is efficient and moves cases through the system is admirable, but even more important is for the courts to provide fair and accessible justice." Denying Mother the ability to call or examine any witnesses and to testify at the dispositional hearing because her counsel had not filed a joint trial statement, and refusing to grant a continuance so that her counsel could prepare one, was neither fair nor accessible justice.

E. The Court May Control Courtroom Proceedings Through Case-Specific Orders

While the local rule here is unenforceable because it conflicts with California law and it was adopted in violation of the Government Code and the California Rules of Court, California courts retain the ability to manage the litigation before them by means of case-specific orders, provided that those orders are consistent with California law and afford litigants due process. (*Rutherford*, *supra*, 16 Cal.4th at p. 967 [trial courts are "entitle[d] to exercise reasonable control over all proceedings connected with pending litigation . . . in order to ensure the orderly administration of justice"].) Like all trial courts, the dependency court has the inherent authority to issue tailored orders. (*Bracher v. Superior Court* (2012) 205 Cal.App.4th 1445,

18

1458 [distinguishing between orders made pursuant to blanket court policies and those made to address the particular needs of a pending matter].) Trial courts may make scheduling and procedural orders similar in nature to the local rule at issue here as long as those orders are expressly entered in individual cases, not imposed by an unpublished general rule adopted in violation of state law. Where the court seeks to use unpublished rules, counsel and the parties must be made aware of the procedures the court is imposing, and must have notice and an opportunity to be heard by the court as to the applicability, deadlines, and other issues that may arise in the application of the rule to the case before the court.

> III. Precluding Live Testimony As a Sanction for Violating the Local Rule Was Improper

A. Absence of Notice

Even had the local rules here been properly adopted and enforceable, the court's ruling barring Mother from testifying and examining her daughter on the statements contained in a report to the court because she had failed to submit the joint trial statement would run afoul of section 575.2. This statute allows superior courts to promulgate local rules that give them the authority to strike a pleading, dismiss an action, or "impose other penalties of a lesser nature as otherwise provided by law" for failure to comply with other local rules. The statute cautions, however, that "[n]o penalty may be imposed under this section without prior notice to, and an opportunity to be heard by, the party against whom the penalty is sought to be imposed." (§ 575.2, subd. (a).)

19

The local rule requiring a joint trial statement, like all the local rules on the document provided to this court, is silent on the consequences of noncompliance.  As a result, there is no indication that either Mother or her counsel had any reason to know any adverse action, including preventing Mother from testifying or calling witnesses, could result if she failed to file a joint trial statement.  The record before us contains no evidence that the court provided the parties with any such notice before refusing to permit Mother to call witnesses at the start of the dispositional hearing.  "Under section 575.2, the court exceeded its authority by imposing sanctions for noncompliance with the Local Rules, 'without prior notice to, and an opportunity to be heard by, the party against whom the penalty is sought to be imposed.'" (*Le v. An* (2008) 168 Cal.App.4th 558, 565 [abuse of discretion to strike answer and enter default for failure to attend case management conference where notice did not state these penalties for failure to attend].)[6]

B. Disproportionate Sanction

The sanction imposed here was disproportionate to the conduct it punished.  "Although authorized to impose sanctions for violation of local rules (Code Civ. Proc., § 575.2, subd. (a)), courts ordinarily should avoid treating a curable violation of local procedural rules as the basis for crippling a litigant's ability to present his or her case.  As the court declared in *Kalivas*, *supra*,

---

[6]     Following the procedures mandated for adopting local rules would have addressed this issue, along with other issues such as deadlines for compliance, on which the rule was silent as adopted.  This failure resulted in an ambiguous rule, placing counsel and litigants in peril, as demonstrated by the events in this matter.

49 Cal.App.4th 1152, 57 Cal.Rptr.2d 200, in the absence of a demonstrated history of litigation abuse, '[a]n order based upon a curable procedural defect [including failure to file a statement required by local rule], which effectively results in a judgment against a party, is an abuse of discretion.' [Citation.]" (*Elkins*, *supra*, 41 Cal.4th at p. 1364.)  The California Supreme Court found in *Elkins* that the "trial court abused its discretion in sanctioning petitioner by excluding the bulk of his evidence simply because he failed, prior to trial, to file a declaration establishing the admissibility of his trial evidence. The sanction was disproportionate and inconsistent with the policy favoring determination of cases on their merits." (*Id*. at pp. 1363-1364.) The Court concluded, "In applying the local rule and order mechanically to exclude nearly all of petitioner's evidence—and proceeding, in the words of the trial court, 'quasi by default'—the trial court improperly impaired petitioner's ability to present his case, thereby prejudicing him and requiring reversal of the judgment." (*Id*. at p. 1365, fn. omitted.)

The same is true here, where the juvenile court excluded all of Mother's evidence because her counsel had not filed a joint pretrial statement.  The court had options to punish counsel for her error short of denying Mother the ability to present any witnesses at the dispositional hearing.  If the joint trial statement was necessary, the court could have resolved the issue by briefly continuing the hearing, permitting Mother to file a joint trial statement, and, if appropriate, scheduling a new hearing directing Mother's counsel to show cause why sanctions should not be imposed against her.  As in *Elkins*, *supra*, 51 Cal.4th 1337, the court's application of its local rule improperly

21

impaired Mother's ability to present her case, thereby prejudicing her and requiring reversal of the judgment.

IV.    Conclusion

"Court procedures, however well-intentioned, should not be imposed at the expense of the parties' basic rights to have their matters fairly adjudicated . . . ." (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 423.)  Here, the court procedure—promulgated without compliance with the requirements for adopting local rules, applied without notice to Mother of any consequences for the rule's violation, and imposed to effectively deny Mother a contested dispositional hearing—compromised Mother's right to have the dependency matter fairly adjudicated.  The dispositional order must be reversed and the matter remanded for a new disposition hearing.

## DISPOSITION

The dispositional orders are reversed and the matter remanded to the juvenile court with instructions to conduct a new dispositional hearing without reference to the local rule but subject to any individualized case management orders entered in the case.

ZELON, Acting P. J.

I concur:

FEUER, J.

22

SEGAL, J., Concurring.

I agree with the majority that the juvenile court erred by barring Maria from testifying and calling her daughter as a witness because Maria's attorney did not comply with a requirement that was not even in effect when the Los Angeles County Department of Children and Family Services filed this action and of which the court gave the parties no prior notice of the consequences for noncompliance. The court's ruling deprived Maria of notice and an opportunity to be heard, cornerstones of our system of justice. (See *Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1108 ["notice and an opportunity to be heard" are "the most rudimentary of due process procedures"].) The ruling was also disproportionately harsh, especially given that Maria sought to testify and have her daughter testify only because of a significant, last minute change of position by minors' counsel. Therefore, I wholeheartedly join Part III of the discussion section of the majority opinion.

I also agree courts and courthouses cannot adopt and implement local rules without complying with the legislatively prescribed procedures for adopting local rules. And I agree courts have the authority to manage cases by requiring litigants and their attorneys to comply with courtroom procedures and trial setting orders. Therefore, I enthusiastically join Parts I and II(E) of the discussion section of the majority opinion.

I have difficulty with the remainder of Part II, however, because I am not entirely convinced the McCourtney Courthouse Policies were adopted in violation of state law or, as written, conflict with state law. For the most part, these policies address matters that, in my view, do not need to be published and

distributed to bar associations and stakeholders, made available for public review and comment, and submitted to the Judicial Council.[1]  For example, one of the policies provides, "All courtrooms open at 8:30 and attorneys will be present to begin work."  Another policy states, "Calendar Call will be at 8:45 a.m. — all counsel must be present in the courtroom at that time."  Another policy provides, "The court shall use reasonable efforts to give priority to cases that have settled."  Most of the other policies involve these kinds of courtroom operations and case management issues.  I do not think the law requires a court to obtain public comment and Judicial Council approval for these kinds of matters.

The only policy our decision targets provides:  "Joint Trial Statements are required for all scheduled contests."  I am not so sure this is a local rule; but if it is, it isn't much of one.  As the majority recognizes, the policy does not prescribe any deadlines for filing the statement (e.g., five court days prior to the scheduled contest), nor is there any consequence or sanction for noncompliance.  The unacceptable consequence in this case derives not from the policy, but from the juvenile court's application of the policy.

The record does not contain a copy of the Joint Trial Statement required by the policy.  In response to our request, however, the Department submitted a form document titled "Statement of Issues at Trial and Evidence To Be Introduced at Trial" and represented that it is the Joint Trial Statement

---

[1]     A copy of the McCourtney Courthouse Policies submitted by the Department is attached as appendix A, *post*, page 6.

2

referred to in the policy.[2]  For the most part it does little more than request basic information about the case that courts throughout California routinely request.  For example, it asks counsel to provide the names of the attorneys in the case, the time estimate for trial, whether there are any outstanding discovery or witness availability issues, whether there are any uncontested or stipulated issues, and whether counsel have met and conferred about settlement.  Courts request this kind of information every day and in virtually every trial or contested proceeding.  I do not think courts need to comply with Code of Civil Procedure section 575.1 or California Rules of Court, rule 10.613, to obtain this information.

Of particular relevance here, the Joint Trial Statement form submitted by the Department requires the parties to complete a section headed "Witness:  Name/Testimony/Time Estimate."  It is hard for me to conceive of a trial, evidentiary hearing, or contested proceeding where the judge does not ask who the witnesses will be, the general subject matter of their testimony, and how long counsel anticipate they will testify.  A brief survey of the Courtroom Information page for the Stanley Mosk Courthouse on the Los Angeles Superior Court website reveals that judges in the civil division ask for this information (and more) as a matter of course and often require counsel to complete trial preparation forms unique to that courtroom.  (See, e.g., Super. Ct. L.A. County, Stanley Mosk Courthouse, *Courtroom Information* <http://www.lacourt.org/ courtroominformation/ui/result.aspx> [as of July 9, 2019, Departments 14, 16, 17, 19, 24, 26, 28, 30, 31, 32, 34, 37, 40, 45,

_____

[2]     A copy of the document is attached as appendix B, *post*, page 7.

3

47, 48, 50, 53, 56, 57, 58, 68, 74, 96].)  I do not understand the majority opinion to affect a trial court's ability to ask for this information in preparation for a trial or evidentiary hearing.

Finally, the majority makes clear in Part II(E) that California courts have broad discretion to implement case management rules and policies that "enable the just and efficient resolution of cases."  (Cal. Stds. Jud. Admin., § 2.1; see Welf. & Inst. Code, § 350 ["The judge of the juvenile court shall control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought."]; Cal. Rules of Court, rule 3.713(c) ["It is the responsibility of judges to achieve a just and effective resolution of each general civil case through active management and supervision of the pace of litigation from the date of filing to disposition."]; *id.*, rule 5.546(j) [if a party fails to comply with rules and orders governing prehearing discovery, "the court may . . . grant a continuance, prohibit a party from introducing in evidence the material not disclosed, dismiss the proceedings, or enter any other order the court deems just under the circumstances"].)  I agree.  In particular, courts have the authority to request time estimates and enforce time limits, as long as the limits are reasonable and the court remains "mindful that each party is entitled to a full and fair opportunity to present its case."  (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 21; see *People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 149 ["'Judges need to be proactive from the start in both assessing what a reasonable trial time estimate is and in

4

monitoring the trial's progress so that the case proceeds smoothly without delay.'"]; *California Crane School*, at pp. 20, 22 ["[f]or those cases in which the trial judge believes time limits should be set, the court should first elicit estimates from the parties and invite each side to comment on the other's estimate," and "in those cases in which the trial court imposes time limits, it is also important that those limits be enforced"].)[3]

Indeed, the majority recognizes trial courts have the authority to "make scheduling and procedural orders similar in nature to" the joint trial statement policy, "as long as those orders are expressly entered in individual cases, not imposed by an unpublished general rule adopted in violation of state law." (Maj. opn. *ante*, at p. 19.) In my view, even under the majority's holding, had the juvenile court previously entered an order requiring the parties to comply with the joint trial statement policy, that requirement would not violate state law. That seems to me an easy fix that would apply in almost every case. Of course, it would not have cured the error in this case for the reasons set forth in Part III of the majority's opinion. Therefore, and with this understanding, I concur.


SEGAL, J.

---

[3]     "Once the parties have presented their views, the court should independently evaluate the estimates based on the arguments of the parties, the state of the pleadings, the legal and factual issues presented, the number of witnesses likely to testify, the court's trial schedule and hours, and the court's experience in trying similar cases." (*California Crane School, Inc. v. National Com. For Certification of Crane Operators*, *supra*, 226 Cal.App.4th at p. 20.)

5

**Appendix A**

**McCourtney Courthouse Policies**

These policies will take effect on Monday, August 13, 2018:

1. All courtrooms open at 8:30 and attorneys will be present to begin work.

2. Calendar Call will be at 8:45a.m.- all counsel must be present in the courtroom at that time.

3. All reports properly served must be previously read by counsel.

Be prepared to give status report regarding required "on call" witnesses. Ready cases will be heard following Calendar Call.

4. Contested Hearings/Trials begin at 10:00 a.m. No continuance/waiting without good cause.

No overbooking/ stacking of trials out of home court without coverage. Coverage must be prepared to commence trial at 10:00 a.m.

5. Continued Cases - must be called on the record and all parties present will be ordered back on the record.

6. Attorneys must immediately respond to a page or phone call from the courtroom and must return to courtroom forthwith unless the court specifically orders otherwise.

7. Joint Trial Statements are required for all scheduled contests.

8. The court shall use reasonable efforts to give priority to cases that have settled.

9. LADL and CLC will have a supervisor for each firm on site in McCourtney at least one day every two (2) weeks.

6

# Appendix B

In Re: Click here to enter text.

            Minor(s)

)  **CASE NO.(s):** Click here to enter text.
)
)  **STATEMENT OF ISSUES AT TRIAL AND**
)  **EVIDENCE TO BE INTRODUCED AT TRIAL**
)
)  **Date:** Click here to enter a date.
)  **Dept.:** Click here to enter text.
)  **Hearing Type:** Click here to enter text.

**Petitioner Attorney:** Click here to enter text.

**Minor Attorney:** Click here to enter text.

**Parent Attorney:** Click here to enter text.

**Other Attorney:** Click here to enter text.

**Time Estimate for Trial:** Click here to enter text.

☐ **Outstanding Discovery or Witness Availability Issue**

**Party & Issue:** Click here to enter text.

**CONTESTED ISSUES**

**Party:** Click here to enter text.

☐**Adjudication:** Enter Specific Issues
☐**Home of Parent:** Click here to enter text.
☐**Visitation Order:** Click here to enter text.
☐**Reasonable Services:** Click here to enter text.
☐**Placement:** Click here to enter text.
☐**Termination of Jurisdiction:** Click here to enter text.
☐**Other:** Click here to enter text.
**Exhibit:** Click here to enter text.

**Witness:** Name/Testimony/Time Estimate.

**NONCONTESTED ISSUES/STIPULATIONS**

Click here to enter text.

☐ **COUNSEL HAVE MET AND CONFERED REGARDING SETTLEMENT**

**Respectfully Submitted,**

Click here to enter text. **Attorney for:** Click here to enter text.

Form #JUV 038