Filed 6/16/26  Marriage of Burmeister CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of DANIELLE and JAMESON BURMEISTER. | |
| DANIELLE BURMEISTER,<br><br>Respondent,<br><br>v.<br><br>JAMESON BURMEISTER,<br><br>Appellant. | G064460<br><br>(Super. Ct. No. 20D002688)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sherri L. Honer, Judge. Reversed and remanded.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Barbero for Appellant.

Quinn & Dworakowski and David Dworakowski for Respondent.

\*        \*        \*

Jameson Burmeister appeals from a judgment in this marital dissolution action involving his former spouse, Danielle Burmeister.[1] Before trial, the court imposed sweeping evidentiary and issue sanctions against Jameson because he did not comply with pretrial deadlines set forth in the court's standing order. In particular, the court limited the trial to issues raised by Danielle. The court also prohibited Jameson from submitting any exhibits in his case in chief unless it was for impeachment purposes or from calling witnesses other than the parties and impeachment witnesses.

On appeal, Jameson contends the court abused its discretion by imposing the sanctions, which resulted in prejudice to Jameson. He alternatively argues the court's error is reversible per se. For the reasons *post*, we agree the court abused its discretion. We accordingly reverse the judgment and remand for a new trial.

## STATEMENT OF FACTS

Jameson and Danielle were married for 12 years and have two children. In 2020, Danielle filed a petition for dissolution of marriage.

## I.

### THE MANDATORY SETTLEMENT CONFERENCE

In December 2022, the court held a mandatory settlement conference. Jameson appeared in propria persona. According to the court's minute order, the court e-mailed a copy of its "Trial Requirement Order" to the parties (the Standing Order).

---

[1] We refer to the parties by first name to avoid confusion. No disrespect is intended.

## II.

### THE COURT'S STANDING ORDER

The Standing Order, which is central to the instant appeal, required the parties to comply with the following deadlines: (1) exchange final declarations of disclosure by March 10, 2023;[2] (2) file and serve an income and expense declaration by March 16, 2023; (3) exchange witness lists and upload exhibits to the court's portal by March 22, 2023; (4) meet and confer by March 24, 2023; and (5) file witness lists and a joint statement by April 3, 2023.[3]

The Standing Order did not specify the dates above, which we have calculated, but it required the parties to complete the pretrial tasks by designated intervals before trial. For example, 10 court days prior to the April 10, 2023 pretrial conference, the parties had to participate in a meet and confer conference.

With respect to witness lists, the Standing Order directed the parties to exchange witness lists two court days before the meet and confer conference and to file their witness lists at least five court days before the pretrial conference. The Standing Order warned: "Absent the court finding good cause, **if a party fails to timely file or exchange the party's**

---

[2] The Standing Order indicated the final declarations of disclosure had to be exchanged 45 days before trial, which fell on Sunday, March 12, 2023. Because the date fell on a weekend, Danielle appears to suggest the deadline was March 10, 2023.

[3] We calculated these deadlines based on the language in the Standing Order. We treated deadlines referenced by "court days" as excluding weekends and judicial holidays and deadlines referenced by "days" as calendar days.

**Witness List, the party will only be permitted to call the parties and impeachment witnesses as witnesses.** *Party may also be sanctioned*."

Regarding exhibits, the parties were required to upload all exhibits to the "Electronic Evidence Portal" at least two court days before the meet and confer conference. "**Absent good cause, failure to comply [would] result in a party being unable to introduce any exhibits, including impeachment or rebuttal exhibits, at the Trial or Evidentiary Hearing**."

The parties were also ordered to file a joint statement five court days before the pretrial conference. The Standing Order again warned: "<u>**WARNING**</u>: **Failure to meet and confer and/or failure to file a joint statement may result in the matter being continued, taken off calendar, and/or the imposition of sanctions to one or both of the parties and/or counsel of up to $1,500 pursuant to Code of Civil Procedure section 177.5**."[4] Below this warning, the court included a handwritten notation: "including issue and/or evidentiary sanctions."

Finally, the parties were required to exchange final declarations of disclosure at least 45 days before trial and to file the proof of service five days before trial. They also had to file and serve an income and expense declaration by March 16, 2023.

At the end of the Standing Order, the court included another warning: "**WARNING: Failure to comply with** *any* **portion [of] this order may subject the party and/or counsel not in compliance to sanctions up to $1,500.00 pursuant to . . . section 177.5. Additional consequence may also apply – e.g., matter be taken off calendar or**

_____

[4] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

4

**continued, limitations on introduction of witness testimony and/or exhibits, and/or issue and/or evidentiary sanctions**."

## III.

### JAMESON'S LATE FILINGS

Jameson, who was now represented by counsel, did not comply with the above deadlines. Instead, he filed a final declaration of disclosure on April 5, 2023. He served his witness list and a one-sided joint statement on April 7, 2023 and filed the same documents on April 10, 2023, the day of the pretrial conference. He filed his income and expense declaration on April 7, 2023. The court also had not received Jameson's exhibit list by the time of the pretrial conference, but Danielle's counsel received Jameson's exhibit list on April 7, 2023 through the court's portal.

Given Jameson's late filings, Danielle's counsel filed a declaration requesting attorney fees sanctions pursuant to Family Code section 271 as well as issue and evidentiary sanctions.

## IV.

### THE PRETRIAL CONFERENCE AND SANCTIONS

At the pretrial conference on April 10, 2023, the court noted it had received Danielle's documents but not Jameson's documents. In response, Jameson's counsel explained he tried to file "[a]ll [their] stuff . . . but [they] got a rejection notice after hours on Friday [April 7, 2023]." His counsel also claimed he was new to the case and was engaged on another matter.

Danielle's counsel argued Jameson should "not be allowed to . . . use his exhibits or his witnesses or identify any issues that were not identified on [Danielle's] portion of the joint statement." Assuming the court continued the matter without any issue or evidentiary sanctions, Danielle's

5

counsel requested $10,000 in sanctions to "re-prepare based on [Jameson's recently provided] exhibits, witnesses, and balance sheet."

When asked what prejudice Danielle suffered due to Jameson's tardiness, Danielle's counsel argued Jameson had "an unfair advantage" because he was able to respond to all of Danielle's documents, witnesses, and arguments while Danielle did not have the same opportunity. She also argued Jameson requested reimbursements and credits for community expenses, but Danielle had not received any relevant documentation.

After hearing from both parties, the court imposed the following sanctions: (1) Jameson was prohibited from submitting any exhibits in his case in chief unless it was for impeachment purposes; (2) Jameson was not allowed to call witnesses other than the parties and impeachment witnesses; and (3) only issues raised in Danielle's joint statement would be addressed at trial.

The court explained the sanctions were necessary because late documents impede a party's ability to adequately prepare for trial. The court added that Jameson "was fully aware the [c]ourt expect[ed] compliance because the [c]ourt admonished him that he was to comply and meet and confer with [Danielle's counsel]."

V.

TRIAL

Trial commenced about two weeks later for adjudication of the issues raised by Danielle—i.e., property division, reimbursement, *Watts*

charges against Jameson,[5] and *Epstein* credits in favor of Danielle.[6] The parties waived spousal support.[7]

## A. *Epstein Credits and Watts Charges*

Among other things, Danielle requested Jameson reimburse her for her expenses on the family home after their separation. She had exclusive use and possession of the property during this time. In other words, she sought *Epstein* credits.

At trial, Jameson's counsel questioned Danielle if she refused to be assigned any type of charge for her fair use of the family home after separation. The court sustained a relevance objection and explained: "[Y]ou want to give a *Watts* charge to her for the fair rental value, and that was not raised – it wasn't part of the issues that were raised by [Danielle] that we're at trial for, so you're not going there. No information regarding fair rental value." (Italics added.) But the court said Jameson could address whether the amount Danielle sought for reimbursement of her expenses "should have been in lieu of spousal support."

Jameson later made an offer of proof that there was a disparity of income between the parties. He argued the court had to determine if Danielle's requested *Epstein* credits were "in the nature of [spousal] support, rather than reimbursable." The court questioned whether the issue was

---

[5] A *Watts* charge requires a spouse to reimburse the community for his or her exclusive use of a community asset after separation. (*In re Marriage of Watts* (1985) 171 Cal.App.3d 366.)

[6] An *Epstein* credit reimburses a spouse who used separate property funds to satisfy community obligations after separation. (*In re Marriage of Epstein* (1979) 24 Cal.3d 76.)

[7] The court previously entered a stipulated partial judgment addressing child custody and visitation.

barred at trial given the sanctions order and whether Jameson failed to raise it as an affirmative issue. After hearing from the parties, the court indicated it would consider the parties' legal authorities and reconsider the line of questioning.

Later in the trial, the court noted it would consider income and expense declarations as well as W-2 forms to determine if spousal support would have been awarded. The court explained Jameson's counsel suggested the court analyze whether spousal support would have been awarded "and if [the court] wasn't going to be awarding spousal support, then there would be no payment in lieu of spousal support." Jameson's counsel responded: "[W]hen they're saying, well, they're not in the nature of the support, determining whether they're in the nature of the support . . . ." The court suggested it would consider the totality of the circumstances.

B. *Jameson's Pocket Brief*

During trial, Jameson filed a pocket brief arguing the court's sanctions were an abuse of discretion and violated his due process rights. Jameson claimed the court prevented him "from having a fair and full opportunity to present competent, material and relevant evidence." He identified specific evidence he would have presented absent the sanctions, including: (1) an appraiser's testimony about the fair market value and fair rental value of the family home; (2) the fair market value of another property the parties owned; (3) the value of a vehicle; (4) the condition and value of various other assets; (5) *Epstein* credits for Jameson's post-separation payments made on community obligations using separate property funds; and (6) evidence that Danielle's claimed *Epstein* credits were not reimbursable because her expenses were in the nature of spousal support.

At the end of trial, the court justified the imposed sanctions. It explained that its Standing Order "specifically says failure to file or exchange a witness list absent good cause will result in a party only being allowed to call parties and impeachment witnesses." The court added the Standing Order also "indicates absent . . . good cause . . . there will be no exhibits introduced, including impeachment or rebuttal." The court emphasized there was a "good cause requirement" and that monetary sanctions were an alternative. But the court did not think monetary sanctions were adequate in the instant case "because, ultimately, what would result is a continuation of the trial."

## VI.

### JUDGMENT

In November 2023, the court entered a "Status only" judgment dissolving the parties' marital status. In May 2024, the court entered judgment on reserved issues. Jameson filed a timely notice of appeal.

### DISCUSSION

Jameson argues the court abused its discretion by imposing issue and evidentiary sanctions instead of monetary sanctions, particularly where he complied with the Superior Court of Orange County, Local Rules, rule 709(D) and Danielle showed no prejudice from a continuance of trial. He also claims the court's imposition of sanctions constitutes reversible error per se because Jameson was deprived of his day in court. Finally, he contends the court's error resulted in a miscarriage of justice and violated public policy. We agree the court abused its discretion.

9

# I.

## APPLICABLE LAW AND STANDARD OF REVIEW

A trial judge may adopt rules that apply solely to his or her courtroom if the court follows publication rules required by the California Rules of Court. (§ 575.1, subd. (c).) Trial courts also have authority to manage proceedings and enforce compliance with pretrial orders by imposing sanctions. (§§ 128, 575.2, subd. (a) [authorizing sanctions for noncompliance with local rules if the penalized party is given prior notice and an opportunity to be heard]; *In re Harley C.* (2019) 37 Cal.App.5th 494, 501–502.)

In imposing sanctions, trial courts generally must ensure the sanctions are proportionate to the misconduct. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1363–1364 (*Elkins*) [sanction for violation of local rules was improper where it was "disproportionate and inconsistent with the policy favoring determination of cases on their merits"]; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992.)

We review a trial court's imposition of sanctions for abuse of discretion. (*In re Marriage of Schleich* (2017) 8 Cal.App.5th 267, 276.) A reviewing court will typically affirm a sanctions order unless it is "arbitrary, capricious, whimsical" or exceeds the bounds of reason. (*In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 108.)

# II.

## DISPROPORTIONATE SANCTIONS

Here, the trial court abused its discretion because the imposed sanctions were not tailored to the misconduct at issue. It is undisputed Jameson did not comply with the Standing Order's deadlines. But this was not a case where a party completely failed to participate in the pretrial process or appeared at trial with undisclosed claims or evidence. Before trial,

10

Jameson served his witness list and one-sided joint trial statement, provided his exhibit list through the court's portal, and filed a final declaration of disclosure as well as an income and expense declaration. All these materials were provided 19 to 21 days before trial. Jameson further filed his witness list and one-sided joint trial statement 16 days before trial. As Jameson notes, his filings complied with the Superior Court of Orange County, Local Rules, rule 709(D), which requires parties to file and serve a joint statement, exhibit list, income and expense declaration, and witness list at least 10 calendar days before trial.

The court nevertheless imposed significant evidentiary and issue sanctions for his noncompliance with the Standing Order. As noted *ante*, trial was limited to issues raised by Danielle. Jameson also was prohibited from calling witnesses other than the parties or impeachment witnesses. He likewise was barred from introducing exhibits in his case in chief unless it was for impeachment purposes. The practical effect of these sanctions was to preclude Jameson from presenting claims and defenses on key issues, including valuation evidence regarding community assets, reimbursement for the reasonable value of Danielle's post-separation use of community property (*Watts* charges), and *Epstein* credits for Jameson's post-separation payments made on community obligations using separate property funds. "Although authorized to impose sanctions for violation of local rules . . . , courts ordinarily should avoid treating a curable violation of local procedural rules as the basis for crippling a litigant's ability to present his or her case." (*Elkins*, *supra*, 41 Cal.4th at p. 1364, citation omitted; see *Guardianship of A.H.* (2022) 83 Cal.App.5th 155, 160 [trial court's inherent power should not be used to prevent a party's full and fair opportunity to present all material evidence].)

11

We further note the court could have imposed less severe sanctions. Indeed, monetary sanctions were available under the Standing Order, and a brief continuance of trial would have addressed any timing concerns. Danielle disagrees, claiming a continuance would have delayed litigation, imposed burdens on the court and parties, and was unnecessary without a showing of good cause. Although these are valid concerns, they do not justify sanctions that prevented Jameson from litigating key issues in the proceedings.

Danielle suggests the sanctions were justified because Jameson repeatedly violated the court's orders, but she points to no prior instances of noncompliance. The noncompliance at issue occurred after substitution of counsel who served or filed the relevant materials before trial. (See § 575.2, subd. (b) ["It is the intent of the Legislature that if a failure to comply with these rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto"].) There is no evidence Jameson or his counsel deliberately violated the court's order.

For the foregoing reasons, the court abused its discretion by imposing the sanctions.

## III.

### PREJUDICE

Danielle insists any error in imposing the sanctions was not prejudicial. First, she claims Jameson forfeited any *Watts* charges or *Epstein* claims by not listing them on his joint statement of issues to be tried. But Jameson still referenced those issues in his mandatory settlement conference materials, and his witness list identified anticipated testimony concerning the rental value of the family home. Second, Danielle emphasizes the parties

12

entered into a stipulation on some of their assets. The existence of those stipulations does not eliminate prejudice arising from the sanctions order, which restricted Jameson's ability to present evidence. Finally, Danielle asserts the court considered "whether certain reimbursements were disguised [as] support and expressly reviewed the parties' income records" in determining Danielle's *Epstein* credits. Again, this argument does not eliminate prejudice arising from the broad sanctions order, which restricted Jameson's ability to present affirmative evidence and argument regarding disputed economic matters.

In short, the error was prejudicial. The judgment is accordingly reversed and remanded for a new trial. Nothing in this opinion precludes the trial court from issuing monetary sanctions as appropriate. In reaching this conclusion, we do not minimize the importance of complying with pretrial orders. Trial courts can manage their calendars and enforce orderly procedures. But this authority does not eliminate the requirement that sanctions remain proportionate and consistent with a party's right to a meaningful opportunity to be heard. As our Supreme Court noted: "[W]e are sympathetic to the need of trial courts to process the heavy caseload of dissolution matters in a timely manner, [but] a fair and full adjudication on the merits is at least as important in family law trials as in other civil matters, in light of the importance of the issues presented . . . ." (*Elkins*, *supra*, 41 Cal.4th at p. 1345.)

13

DISPOSITION

The judgment is reversed, and the matter is remanded for a new trial consistent with this opinion. Jameson shall recover his costs incurred on appeal.

SANCHEZ, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.